UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| KELLY THOMPSON, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FIA LIQUIDATION COMPANY, INC., a Florida corporation,<br><br>Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Kelly Thompson ("Plaintiff Thompson" or "Thompson") brings this Class Action Complaint against Defendant FIA Liquidation Company, Inc. d/b/a Fiorella Insurance Agency, Inc. ("Defendant Fiorella Insurance" or "Fiorella Insurance") to stop the Defendant from violating the Telephone Consumer Protection Act by making pre-recorded calls to consumers' phone numbers without first obtaining their prior express consent. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Thompson, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Kelly Thompson is a resident of Tampa, Florida.

2. Defendant Fiorella Insurance is a Florida corporation headquartered in Stuart, Florida. Defendant Fiorella Insurance conducts business throughout this District, Florida, and the U.S.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

1

4.     This Court has personal jurisdiction and venue is proper since Defendant resides in, and the conduct giving rise to this case was directed from this District.

## INTRODUCTION

5.     As the Supreme Court explained at the end of its last term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7.     By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8.     The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

10.    According to online robocall tracking service "YouMail," 3.9 billion robocalls were placed in December 2020 alone, at a rate of 124.8 million per day. www.robocallindex.com (last visited Jan. 28, 2021).

11.    The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14. Defendant Fiorella Insurance sells insurance products to consumers.

15. Fiorella Insurance uses telemarketing as a means of selling its insurance products to consumers, including telemarketing calls using a prerecorded voice message.

16. Such calls are made without prior express written consent.

17. Consumers have raised numerous complaints online about Defendant's unsolicited telemarketing calls, including complaints specifically alleging the use of pre-recorded voice messages:

- "I have the same problem with repeated telephone solicitation. I have pressed the number 5 as the recording states will remove me from the calling list. I called the company and spoke to them twice requesting my number be removed. On one call when I pressed 5 to be removed, I heard a recording that sounded like chimpanzees laughing. That might be their little inside joke. I will block the number and hope it stops. Seems other people have reported them to the attorney general to no avail."[3]
- "I have repeatedly ask these people to quit calling even talked to a supervisor and was told they removed our number.
  here it is at 704pm and the calls keep coming they have called up to 10pm at night. as of now we have sent a letter to Florida AG with a copy of caller id and also sent to our atty. this fly by night company just likes to harass you........"[4]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.yelp.com/not_recommended_reviews/fiorella-insurance-agency-stuart-4
[4] *Id.*

- "Horrible customer service and they keep you on a cold call list Stay away"[5]
- "Awful company, constant robo dialing us day in and ay out after many requsts to stop."[6]
- "if i could give this a negative star i would.  the amount of calls per day from different numbers is so unprofessional. then they leave a voice mail .  we have been getting a minimum of 3 calls per day everyday for the last 2 months.  we have told every representative to stop the calls.  does this company feel we will call them if we have a need? there is no way i would call them or recommend them to anyone."[7]
- "despite my requests for them to stop, this agency (who i have never contacted or given my info to) continues to send spam texts to my personal cell number."[8]
- "This company has solicited me and only after getting MORE than 20 calls AFTER being I have repeatedly said to stop calling, I contacted the Attorney General...hopefully that will stop the harassment.
If it were possible to give negative stars, this would be a good place to start."[9]
- "They keep call me for health insurance on my do-not-call-listed cell phone, which is a violation of federal law. I have never done business with them, live in a completely different state, have never lived in Florida, don't have a Florida number, etc."[10]
- "Recorded call soliciting for health insurance. Fiorella Insurance."[11]

18. The website YouMail.com has numerous recordings posted of pre-recorded solicitation calls that consumers received including:

---

[5] https://www.bbb.org/us/fl/stuart/profile/insurance-agency/fiorella-insurance-agency-inc-0633-31002370/customer-reviews
[6] https://www.yelp.com/biz/fiorella-insurance-agency-stuart-4
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] https://www.shouldianswer.com/phone-number/7726001134



12

19. In addition, RoboKiller.com posted a pre-recorded voice recording that a consumer received, also showing that 1,094 calls have been detected from Fiorella Insurance just using phone number 813-322-9005:

---

[12] https://directory.youmail.com/directory/phone/8133229208



## PLAINTIFF THOMPSON'S ALLEGATIONS

20. At the beginning of February 2021, Plaintiff started receiving unsolicited calls from Defendant to her cell phone, from phone number 813-322-9208.

21. Plaintiff did not answer the calls because she did not recognize the phone number.

22. Defendant left pre-recorded voice mails on Plaintiff's cell phone clearly identifying the name Fiorella Insurance regarding Blue Cross insurance.

23. Plaintiff already has health insurance and was not looking to get a quote or additional insurance.

24. Plaintiff received multiple calls to her cell phone on certain days, such as on February 9, 2021 when she was called at 10:20 AM and again at 1:37 PM.

25. Plaintiff blocked 813-322-9208 on her cell phone but Defendant continued to receive pre-recorded voice messages on her cell phone.

26. Plaintiff never provided her cell phone number to Defendant Fiorella Insurance or gave them any consent to call her.

27. The unauthorized telephone calls that Plaintiff received from or on behalf of Fiorella Insurance, as alleged herein, has harmed Plaintiff Thompson in the form of annoyance,

---

[13] https://lookup.robokiller.com/p/813-322-9005

nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone and her voicemail.

28. Seeking redress for these injuries, Plaintiff Thompson, on behalf of herself and a Class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits pre-recorded voice calls to cell phone numbers.

## CLASS ALLEGATIONS

29. Plaintiff Thompson brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant (or an agent acting on behalf of Defendant) called (2) using a pre-recorded voice message, and (3) for whom the Defendant claims it obtained prior express written consent from the person or the person's telephone number in substantially the same manner as Defendant claims it obtained prior express written consent from Plaintiff or Plaintiff's telephone number.

30. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff Thompson anticipates the need to amend the Class definitions following appropriate discovery.

31. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

32. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any

questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    (a)    whether Defendant placed pre-recorded solicitation voice message calls to Plaintiff Thompson and members of the Pre-recorded Class without first obtaining prior express consent to make prerecorded calls to members of the Class;

    (c)    whether Defendant's conduct constitutes a violation of the TCPA; and

    (d)    whether members of the Class are entitled to treble damages based on the knowing and willfulness of Defendant's conduct.

33.    **Adequate Representation**: Plaintiff Thompson will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Thompson has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff Thompson and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Thompson nor her counsel have any interest adverse to the Class.

34.    **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Le. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action

provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Thompson and the Pre-recorded No Consent Class)**

35. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

36. Defendant and/or its agents transmitted unwanted solicitation telephone calls to Plaintiff Thompson and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

37. These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff Thompson and the other members of the Pre-recorded No Consent Class.

38. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Thompson and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Thompson individually and on behalf of the Class, prays for the following relief:

39. An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Thompson as the representative of the Class; and appointing her attorneys as Class Counsel;

40. An award of actual and/or statutory damages and costs;

41. An order declaring that Defendant's actions, as set out above, violate the TCPA;

42. An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

43. Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Thompson requests a jury trial.

Respectfully Submitted,

KELLY THOMSPON, individually and on behalf of all others similarly situated individuals

DATED this 21st day of March, 2021.

/s/ Stefan Coleman
Stefan Coleman (FL Bar No. 30188)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th FL
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Avi R. Kaufman (FL Bar no. 84382)
kaufman@kaufmanpa.com
Rachel E. Kaufman (FL Bar no. 87406)
rachel@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*